A09A2395. BLUE MARLIN DEVELOPMENT, LLC et al. v.
BRANCH BANKING & TRUST COMPANY.
(690 SE2d 252)

MILLER, Chief Judge.
   Following its February 19, 2009 hearing in this case, the trial court confirmed the nonjudicial foreclosure sale of 12.373 acres of unimproved land owned by Blue Marlin Development, Inc. ("Blue Marlin") to Branch Banking & Trust Company ("BB&T"). In doing so, the trial court found that BB&T had proved, by a preponderance of the evidence, that the true market value[1] of the Property on the date of the foreclosure sale was equal to the $450,000 purchase price BB&T paid for the Property. Arguing that a de novo standard of review is controlling, Blue Marlin appeals, contending that the trial court erred (i) in admitting BB&T's evidence as to the true market value of the Property at the time of the sale because its appraisal of the value thereof was flawed, (ii) in admitting the appraisal of BB&T's expert witness as to the true market value of the Property for lack of evidence showing that he was competent to testify as an expert under OCGA § 24-9-67.1 (b), and (iii) in rejecting the testimony of Blue Marlin's expert as to true market value of the Property. Finding that the "any evidence" test is the proper standard of review and that the trial court's confirmation of the foreclosure sale was duly based on the evidence before it, we disagree and affirm.
   It is well settled that "[t]he trial court is the trier of fact in a

---

[1] A trial court cannot confirm a foreclosure sale . . . unless it is satisfied that the property so sold brought its true market value. True market value is the price that the property will bring when it is offered for sale by one who is not obligated, but has the desire to sell it, and is bought by one who wishes to buy it, but is not under a necessity to do so.
(Citations and punctuation omitted.) *Cartersville Developers v. Ga. Bank & Trust*, 292 Ga. App. 375, 377 (664 SE2d 783) (2008); *Kong v. Shearson Lehman Hutton Mtg. Corp.*, 211 Ga. App. 93, 95, n. 6 (438 SE2d 132) (1993). See also OCGA § 44-14-161.

confirmation proceeding, and an appellate court will not disturb its findings if there is any evidence to support them." (Citation omitted.) *Nash v. Compass Bank*, 296 Ga. App. 874, 875 (676 SE2d 28) (2009). "[W]e do not determine witness credibility or weigh the evidence and we view the evidence in the light most favorable to the trial court's judgment." (Punctuation and footnote omitted.) *Chamblee Hotels v. Chesterfield Mtg. Investors*, 287 Ga. App. 342, 343 (651 SE2d 447) (2007).

So viewed, the evidence shows that Blue Marlin borrowed money from BB&T and, in order to secure the indebtedness, conveyed the Property to BB&T by a deed to secure debt. At or about the time Blue Marlin defaulted on the loan, BB&T engaged Michael J. Smith, MAI,[2] to appraise the Property. Mr. Smith appraised the true market value of the Property as $450,000. Thereafter, pursuant to the power of sale contained in its deed to secure debt, BB&T foreclosed its security interest in the Property. BB&T was the successful bidder at the nonjudicial foreclosure sale which followed, bidding in the Property for $450,000.

Inasmuch as the parties stipulated that the foreclosure sale was proper, the only issue at the confirmation hearing was whether the Property was sold at true market value. Employing discounted cash flow analysis and to a lesser extent comparable sales analysis, Mr. Smith testified that the true market value of the Property was $450,000 at the time of the foreclosure. Employing comparable sales analysis, Blue Marlin's expert, Richard G. Martin, also MAI designated, testified that the true market value of the Property at the time of the foreclosure sale was $694,000. Believing that the Property could accommodate 49 rather than 44 units, Mr. Martin had earlier testified that the true market value of the Property was $773,000. Subsequently, the trial court found that "the true fair market value of the Property on the October 7, 2008 date of foreclosure was $450,000 and that [the] foreclosure sale brought the true fair market value of the Property as of the date of the sale." Further, the trial court found that

> the comparable sales approach utilized by both parties to different extents is flawed both as to demographics and remoteness in time due to the absence of recent comparable sales. [Mr. Martin] provided the Court with no alternative basis for his appraisal of true fair market value other than the comparable sales approach. [Mr. Smith], however, pro-

---

[2] MAI is an acronym standing for "Member of the Appraisal Institute," a designation representing the top two percent of the appraisal profession.

vided the Court with a discounted cash flow analysis to support his appraisal of the true fair market value of the Property.

1. Blue Marlin contends that the trial court erred in admitting BB&T's evidence as to the true market value of the Property at the time of the foreclosure sale because Mr. Smith erroneously accounted for development costs twice, failed to discount development costs to present value, and used inapplicable comparables. We disagree.

Whether Mr. Smith accounted for development costs twice or failed to discount development costs to present value are issues raised for the first time on appeal. As such, Blue Marlin has failed to preserve them for review on appeal. *Byrd v. Shelley*, 279 Ga. App. 886, 887 (1) (633 SE2d 56) (2006). As to Blue Marlin's final claim of flawed methodology, the record shows that while Mr. Smith's comparable sales were generally not located in the area of the Property, they were similar to the Property in terms of price and profit level. And although the trial court discounted the testimony of the parties' experts based on sales comparables, as above, it otherwise accepted Mr. Smith's testimony as to the true market value of the Property based on discounted flow analysis.

> On appellate review, the test is not whether this court would have accepted appellant's expert appraisals as the most reliable and accurate, but whether the record contains any evidence to support the findings of the trial court that the property brought its true market value at the foreclosure sale.

(Citations omitted.) *Tarleton v. Griffin Fed. Savings Bank*, 202 Ga. App. 454 (1) (415 SE2d 4) (1992). "In confirmation proceedings, the judge sits as a trier of fact, and his findings and conclusions have the effect of a jury verdict. He hears the evidence and his findings based upon conflicting evidence should not be disturbed by a reviewing court if there is any evidence to support them." (Citations and punctuation omitted.) *Marion G. Davis, Inc. v. Cameron-Brown Co.*, 177 Ga. App. 646, 647 (340 SE2d 216) (1986). Given the foregoing, the trial court's confirmation of the foreclosure sale, as above, was proper.

2. Blue Marlin also claims the trial court erred in admitting Mr. Smith's opinion as to the true market value of the Property for lack of evidence showing that he was competent to testify as an expert

under OCGA § 24-9-67.1 (b).[3] We are not persuaded.

> [W]ith regard to the qualification of a witness as an expert, the question of whether a witness is qualified to give his opinion as an expert is one for the court. Its determination will not be disturbed except that it be manifestly abused. As to the expertise required of such a witness, generally nothing more is required to qualify an expert than that he has been educated in a particular trade or profession; and this special knowledge may be derived from experience as well as study and mental application.

(Punctuation and footnotes omitted.) *Fortner v. Town of Register*, 289 Ga. App. 543, 548 (2) (657 SE2d 620) (2008).

Blue Marlin challenges the sufficiency of the facts on which Mr. Smith based his opinion and argues that he failed to apply such method in a reliable manner. The evidence shows, however, that Mr. Smith's appraisal was based upon extensive facts and careful analysis taking into account the potential for future recovery of a down real estate market by the discounted flow method which, by its appellate brief, Blue Marlin concedes is reliable.

Even were it otherwise, OCGA § 24-9-66 authorizes opinion evidence as to the value of land furnished by a nonexpert who has had an opportunity to form a correct opinion. See *Gen. Motors Acceptance Corp. v. Newton*, 207 Ga. App. 700, 702 (429 SE2d 120) (1993). Accordingly, the trial court did not err in admitting Mr. Smith's opinion testimony.

3. As to Blue Marlin's final claim of error, no evidence shows that the trial court disregarded Mr. Martin's appraisal; on the contrary, after carefully considering the testimony of both experts, the trial court determined that Mr. Martin's appraisal upon comparable sales analysis was flawed because the sales were stale. See *Peterson v. First Nat. Bank of Atlanta*, 201 Ga. App. 762, 763 (412 SE2d 579) (1991) (holding that this Court will not disturb a trial court's decision, if based on some evidence rather than speculation, to accept one

---

[3] OCGA § 24-9-67.1 (b) provides:
If scientific, technical, or other specialized knowledge will assist the trier of fact in any cause of action to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if:
(1) The testimony is based upon sufficient facts or data which are or will be admitted into evidence at the hearing or trial;
(2) The testimony is the product of reliable principles and methods; and
(3) The witness has applied the principles and methods reliably to the facts of the case.

appraiser's opinion over another's).

Under these circumstances, the trial court's confirmation of the foreclosure sale was proper.

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED JANUARY 26, 2010.

*Cohen, Pollock, Merlin & Small, Karen F. White, Anna M. Humnicky,* for appellants.

*Arnall, Golden & Gregory, James A. Gober, Richard A. Mitchell,* for appellee.