A10A1996. ROYAL CROWN PROPERTIES, LLC et al.
v. REGIONS BANK.
(703 SE2d 36)

JOHNSON, Judge.

Following a hearing in this case, the trial court confirmed the nonjudicial foreclosure sale of real property owned by Royal Crown Properties, LLC, and guaranteed by Victor Sonsino and Ehud Goldstein, to Regions Bank. In doing so, the trial court found that Regions Bank had proved that the true market value of the property on the date of the foreclosure sale was equal to the $1,460,000 purchase price Regions Bank paid for the property at the foreclosure sale. Royal Crown Properties, Sonsino, and Goldstein appeal, contending (a) the trial court erred in accepting testimony based on speculation as to the fair market value of the property at the time of sale, and (b) the trial court and Regions Bank's appraiser both improperly considered a listing by Royal Crown Properties as an

---

[13] Id. at 165 (1).
[14] Id. at 165-166 (2).
[15] See id. at 165 (1).

indication of the fair market value of the property. We find no error and affirm the trial court's confirmation of the foreclosure sale.

In a confirmation proceeding, the trial court is the trier of fact, and this Court will not disturb the trial court's findings if there is any evidence to support them.[1] Moreover, we view the evidence in the light most favorable to support the trial court's judgment, and we do not weigh the evidence or determine the credibility of witnesses.[2]

So viewed, the evidence shows that on June 4, 2007, Royal Crown Properties, as grantor, and Regions Bank, as lender, executed a construction security deed in the amount of $2,150,000 for three lots in the Regency Pines subdivision. Sonsino and Goldstein executed separate guaranty agreements for the construction loan on this same date. On November 30, 2007, Royal Crown Properties executed a promissory note in the amount of $840,000 to Regions Bank. On May 4, 2009, Regions Bank sent a letter to Royal Crown Properties declaring it in default under the security deed, note, and guarantees and demanding immediate payment. Additionally, on June 3, 2009, Regions Bank sent a letter to Sonsino and Goldstein notifying them that the property would be foreclosed upon on July 7, 2009 and enclosing a copy of the notice of sale under power.

Prior to the foreclosure sale, Regions Bank hired Michael Helvey, a certified real estate appraiser licensed by the State of Georgia, to value the property. Helvey submitted a detailed, written appraisal on May 15, 2009, concluding that the property's true market value was $1,460,000 ($280,000 for unimproved lot 1, $280,000 for unimproved lot 2, and $900,000 for lot 3, which included a 5,460 square foot house with five bedrooms, five and a half baths, and a three-car garage). The property was offered for sale at a public auction on July 7, 2009 and purchased by Regions Bank for $1,460,000.

At the subsequent confirmation hearing, Royal Crown Properties stipulated that the notice, advertisement, and conduct of the foreclosure sale in question complied with the requirements of Georgia law and that the only issue remaining for the trial court's determination was whether the property in question sold for its true market value. Helvey testified that the true market value of the property at the time of the foreclosure sale was $1,460,000 and that he calculated the value of the unimproved lots by using the sales comparison approach. Tim Ballew, Royal Crown Properties' expert appraiser, agreed with Helvey's opinion of value as to the two

---

[1] *Blue Marlin Dev. v. Branch Banking &c. Co.*, 302 Ga. App. 120, 120-121 (690 SE2d 252) (2010).

[2] Id.

unimproved lots.

With respect to the lot containing the house, Helvey testified that he used two approaches to determine its true market value: the cost approach and the sales comparison approach. When he employed the sales comparison approach, Helvey used six comparables ranging in price from $750,000 to $1,600,000. After making adjustments based on his review of the comparables, Helvey testified that the true market value of the improved lot was $900,000. He noted that Royal Crown Properties originally listed that lot for sale at $1,189,000 and subsequently reduced the listing price to $899,000, which was in line with Helvey's opinion of the lot's adjusted value.

Ballew also testified at the confirmation hearing regarding his opinion of the value of the improved lot. Ballew admitted he did not conduct an actual appraisal of the lot and did not inspect the inside of the house on the lot in developing his opinion of value. However, he testified that based on the five comparables he used, the true market value of lot 3 at the time of the foreclosure was $1,400,000. After considering the testimony of both appraisers, the trial court specifically found "Helvey's testimony a lot more credible than . . . Ballew's."

1. Royal Crown Properties, Sonsino, and Goldstein contend the trial court erred in accepting testimony they claim was based on speculation as to the fair market value of the property at the time of sale. Specifically, they argue that Helvey's opinion of value was speculative because (1) "[n]o attempt was made to qualify Mr. Helvey as an expert," (2) his comparables were not proper or adequate, and (3) his appraisal was two months old at the time of the foreclosure sale. We find no error.

At the outset, we note that after testifying regarding his extensive qualifications, which included being a licensed appraiser by the State of Georgia and having completed over 5,500 real estate appraisals, Helvey was qualified as an expert in the field of real estate evaluation by the trial court without objection from Royal Crown Properties, Sonsino, or Goldstein. Moreover, the record reveals that Helvey's expert valuation was not speculative. Helvey testified in detail as to how he formed his opinion of the true market value of the property using the comparables he chose, and it is not our province to weigh the evidence or determine the credibility of the witnesses. In addition, Helvey further testified that he was not aware of any economic factors that would change his opinion as to the value of the property from May, when he conducted the appraisal, to July, the date of the foreclosure sale. The trial court determined that two months was a reasonable period of time between the effective date of the appraisal and the date of the foreclosure, and the trial court was authorized to consider this evidence in arriving at its factual deter-

mination that the foreclosure sale price represented the property's fair market value at the time of the foreclosure sale.[3]

Value on the date of sale is a factual question to be resolved by the trier of fact, and we will not disturb the trial court's finding that the property in question brought its true market value if the record contains any evidence to support that conclusion.[4] Here, it is clear from the record that the trial court considered the testimony from both appraisers, determined that Helvey's testimony was more credible, and concluded that the property sold for its true market value at the time of the foreclosure sale. The trial court, as the trier of fact, was entitled to find Helvey's testimony credible and to accept his opinion over that of Royal Crown Properties' expert.[5] Since this Court does not determine witness credibility or weigh the evidence presented to the trial court, and since there is evidence in the record to support the trial court's conclusions, we must affirm.

2. Royal Crown Properties, Sonsino, and Goldstein contend the trial court improperly based its conclusion on a listing by them immediately prior to the foreclosure. Specifically, they argue that both Helvey and the trial court were improperly influenced by the fact that they had previously listed the improved lot for $899,000. This argument is not supported by the record.

Helvey testified that he conducted his own independent appraisal, using two analysis approaches, and determined the value of the improved lot to be $900,000. While he testified that he believed the $899,000 listing price was a "fair price," there is no evidence in the record that Helvey based his opinion of value on that listing price. In fact, the evidence shows quite the contrary. In addition, the trial court's comment that the $899,000 listing price "flies in the face of" Royal Crown Properties' argument that the property was worth $1,400,000, merely went to the credibility and amount of weight given to Royal Crown Properties' expert. Because there is ample evidence in the record to support the trial court's order confirming the July 7, 2009 foreclosure sale, this decision must be affirmed.

*Judgment affirmed. Miller, C. J., and Phipps, P. J., concur.*

DECIDED OCTOBER 22, 2010.

---

[3] See *Thompson v. Maslia*, 127 Ga. App. 758, 764 (4) (195 SE2d 238) (1972) (what property may have brought or what it might have been regarded as being worth on market at time relatively close to date of sale may be considered as aid in arriving at market value at time of foreclosure).

[4] See *Blue Marlin Dev.*, supra.

[5] See *Statesboro Blues Dev. v. Farmers &c. Bank*, 301 Ga. App. 851, 853 (690 SE2d 205) (2010).

*Leon A. Van Gelderen*, for appellants.

*Burr & Forman, Erich N. Durlacher, Kwende B. Jones, Harvey Daniels III*, for appellee.